## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

THADDEUS COSBY,                              )
                                             )
      Plaintiff,                          )
                                             )
      v.                                  )   Case No.  **3:20-cv-00494-REP**
                                             )
TOWN OF FARMVILLE; FARMVILLE                 )
POLICE DEPARTMENT; H.A. HOYLE, JR.,          )
Individually and in his Official Capacity    )   **COMPLAINT AND JURY DEMAND**
as an Officer of the Farmville Police        )
Department; STEWART GODSEY,                  )
Individually and in his Official Capacity as )
an Officer of the Farmville Police Department; )
the Estate of TIMOTHY M. BOURNE;             )
WADE STIMPSON, Individually and in           )
his Official Capacity as the Captain of the  )
Farmville Police Department; PRINCE          )
EDWARD COUNTY, VIRGINIA;                     )
OFFICE OF THE COMMONWEALTH'S                 )
ATTORNEY FOR PRINCE EDWARD                   )
COUNTY, VIRGINIA; MORGAN GREER,              )
Individually and in his Official Capacity as )
Assistant Commonwealth's Attorney for        )
Prince Edward County, Virginia; J. DAVID     )
EMERT, Individually; and UNKNOWN             )
OFFICERS 1-11, Individually and in           )
their Official Capacities as Officers of an  )
undetermined jurisdiction,                   )
                                             )
      Defendants.                         )

      Plaintiff Thaddeus Cosby ("Cosby"), by and through his attorney, John M. Janson, and as

and for his Complaint states as follows:

### <u>INTRODUCTION</u>

      1.      Cosby was wrongly convicted of a felony DUI in October 2013, and he served five

years in prison.

2.      Cosby brings this civil rights lawsuit under 42 U.S.C. ' 1983 and ancillary state law claims because the Defendants, individually and in concert with one another, systematically violated his due process rights under the Fourth and Fourteenth Amendments of the United States Constitution and, in so doing, caused his wrongful conviction and imprisonment.

3.      As outlined in this Complaint, the individual Defendant law enforcement officers and police captain, acting under color of the law, knowingly, consciously and repeatedly withheld and suppressed exculpatory and impeachment evidence favorable to Cosby; fabricated evidence; provided and used testimony that they knew to be false; misled the courts and Cosby's counsel about the nature of critical physical evidence; and otherwise acted in bad faith to violate Cosby's clearly established constitutional rights and to wrongfully convict and imprison him.

4.      As also outlined in this Complaint, the governmental law enforcement Defendants adopted and maintained customs, policies, and/or practices that permitted their agents, servants, and/or employees to engage in knowing, conscious, and repeated behavior in bad faith and in violation of Cosby's clearly established constitutional rights and ultimately led to his wrongful conviction and imprisonment.

5.      As further outlined in this Complaint, the governmental prosecuting Defendants and officers knowingly acted outside the boundaries of their prosecutorial jurisdiction, in violation of Cosby's clearly established constitutional rights and ultimately led to his wrongful conviction and imprisonment.

6.      As also outlined in this Complaint, the Defendant prosecutor, in his individual capacity, took and failed to take certain investigative and administrative actions, outside the context of prosecutorial litigation, that ultimately led to Cosby's wrongful conviction and imprisonment.

2

## **THE PARTIES**

7.      Cosby is an African-American male citizen of the Town of Farmville, Virginia.

8.      In October 2013, Cosby was convicted of a felony DUI and sentenced to five years of imprisonment.  Cosby was imprisoned in Virginia jails and prisons from October 4, 2013 until his release on May 21, 2018.

9.      Defendant Town of Farmville ("Town") is a political subdivision of the Commonwealth of Virginia.  The Town is located in both Cumberland and Prince Edward Counties.  The Town is a "person" within the meaning of 42 U.S.C. ' 1983.

10.      Defendant Farmville Police Department ("Police Department"), is an agency or governmental unit created by, sanctioned by, and operating in the Commonwealth of Virginia and the Town of Farmville.  The Police Department is a "person" within the meaning of 42 U.S.C. ' 1983.

11.      Defendant Prince Edward County, Virginia ("Prince Edward County") is a municipal corporation within the Commonwealth of Virginia.  Prince Edward County is a "person" within the meaning of 42 U.S.C. ' 1983.

12.      At all relevant times, the responsible final policymakers for the Police Department were officers, employees, and/or representatives of the Town and/or the Police Department.

13.      Defendant Office of the Commonwealth's Attorney for Prince Edward County, Virginia (the "CAO"), is an agency or governmental unit of Prince Edward County, Virginia.  The CAO is a "person" within the meaning of 42 U.S.C.  ' 1983.

3

14.     Defendants H.A. Hoyle, Jr. ("Officer Hoyle"),  Stewart Godsey ("Officer Godsey"), and Timothy Bourne ("Officer Bourne") (collectively "Defendant Officers" or "Officers"), at all times relevant to this case, were duly appointed law enforcement officers for the Police Department, an agency or governmental unit of the Town, and in both their individual capacities and official capacities, acted under the color of law and pursuant to the customs, policies, and practices maintained by the Town and the Police Department.

15.     Officer Hoyle is a resident and citizen of the Commonwealth of Virginia.

16.     Officer Godsey is a resident and citizen of the Commonwealth of Virginia.

17.     Officer Bourne was a resident and citizen of the Commonwealth of Virginia who died on or about March 22, 2019.

18.     As a result of Officer Bourne's death, the Estate of Officer Bourne is named as a Defendant herein.

19.     Defendant Wade Stimpson ("Captain Stimpson"), at all times relevant to this case, was the Captain of the Farmville Police Department, an agency or governmental unit of the Town, and in both his individual capacity and official capacity, acted under the color of law and pursuant to the customs, policies, and practices maintained by the Town and the Police Department.

20.     Upon information and belief, Captain Stimpson also acted as a responsible final policymaker for the Police Department at all times relevant to this case and, as such, as an officer, employee, and/or representative of the Town and/or the Police Department.

21.     Captain Stimpson is a resident and citizen of the Commonwealth of Virginia.

22.     Defendants Unknown Officers 1-11 are believed to be law enforcement officers employed by the Police Department who participated in the relevant incidents described below and whose identities are not currently known to Cosby.

4

23.     Defendant Officers, Unknown Officers, and Captain Stimpson also are sued in their individual capacities for intentionally and in bad faith, or, in the alternative, recklessly, depriving Cosby of his clearly established right to not be deprived of his liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, including his right not to have exculpatory and impeachment evidence intentionally withheld from him for the purpose of denying him the use of it at trial, to a fair trial, and for conspiring to deprive Cosby of these rights.

24.     Defendant Officers, Unknown Officers, and Captain Stimpson are also sued in their individual capacities for violating Cosby's rights under clearly established Virginia state law.

25.     Defendant Morgan Greer ("Prosecutor Greer") is a resident and citizen of the Commonwealth of Virginia.  At all times relevant to this case, Prosecutor Greer was employed as an Assistant Commonwealth's Attorney in the CAO, a governmental unit of Prince Edward County, and in his official capacity, acted under the color of law and pursuant to the customs, policies, and practices maintained by Prince Edward County and the CAO.

26.     Prosecutor Greer is also sued in his individual capacity for investigative and administrative actions taken and not taken that concern the subject matter of this Complaint and that lie outside the context of prosecutorial litigation.

27.     Defendant J. David Emert ("Juror Emert") is a resident and citizen of the Commonwealth of Virginia.  He also functioned as a Juror at Cosby's criminal trial that took place on October 4, 2013.

28.     In November 2017, Juror Emert was elected to the office of Prospect District Supervisor for the Prince Edward County Board of Supervisors and currently serves as Vice Chair. He is sued in his individual capacity for violating Cosby's rights under clearly established Virginia state law and for wrongful actions taken that concern the subject matter of this Complaint.

5

## JURISDICTION AND VENUE

29.     Cosby brings this civil action under 42 U.S.C. " 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the Commonwealth of Virginia.

30.     This Court has original jurisdiction over Cosby's federal claims pursuant to 28 U.S.C. " 1331, 1343(a)(3), and 2202. 3

31.     This case also arises under the common law of the Commonwealth of Virginia, as well as pursuant to Cosby's right not to be deprived of his liberty without due process of law under the Constitution of Virginia, Article I, ' 11.

32.     This Court has supplemental jurisdiction over Cosby's state law claims under 28 U.S.C. ' 1367(a).

33.     Pursuant to Va. Code ' 8.01-195.6, Cosby, by counsel, timely sent a Notice of Claim, describing his injuries and intent to seek compensation to the Town of Farmville and Prince Edward County.

34.     Under 28 U.S.C. ' 1391(b), venue is lodged in this Court, as the acts complained of occurred in the Eastern District of Virginia.

## JURY DEMAND

35.     Pursuant to the Seventh Amendment of the United States Constitution, Cosby requests a jury trial of all issues and claims set forth in this Complaint.

## FACTUAL ALLEGATIONS IN COMMON TO ALL CAUSES OF ACTION

### Cosby's Pre-Arrest Encounters with Law Enforcement Officers

36.     In October 2012, Cosby was involved in a romantic relationship with Janette Fisher ("Ms. Fisher"), a white woman and a resident of the Town of Farmville.

37.     Upon information and belief, during this same period, Ms. Fisher was also involved in a romantic relationship with a law enforcement officer whose identity is not presently known to Cosby but who was employed by the Police Department.

38.     Upon information and belief, from the beginning of October 2012 forward, Defendant Officers and Unknown Officers had knowledge of Ms. Fisher's simultaneous romantic involvement with both Cosby and with the fellow law enforcement officer who was employed by the Police Department.

39.     From the beginning of October 2012 forward, Defendant Officers and Unknown Officers had knowledge that Cosby had a criminal record which included two DUI convictions within the preceding five years.

40.     On or about October 10, 2012, Officer Godsey, Officer Hoyle, and two other law enforcement officers employed by the Police Department approached Cosby and Ms. Fisher while the two of them were standing in Ms. Fisher's front yard.

41.     At that time, Officer Godsey orally instructed Cosby to leave Ms. Fisher alone.

42.     In issuing this warning, Officer Godsey acted in accordance with a custom or policy of the Police Department and Captain Stimpson to harass, threaten, and punish individuals who engage in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a fellow Police Department officer.

43.     Said acts were undertaken for the purpose of retaliating against the individual who engaged in the relationship described above and to deter the individual from continuing to pursue said relationship.

7

44.     In issuing the warning to Cosby, Officer Godsey also acted in accordance with a custom or policy of the Police Department and Captain Stimpson to harass, threaten, and punish Farmville-area residents who have a prior criminal record, such as Cosby, without cause.

45.     Approximately two weeks later, on the evening of October 24, 2012, Cosby and Ms. Fisher attended a social gathering at a residence on River Road in Cumberland County.  Due to a lack of cell phone coverage inside the premises, Cosby left his cell phone in the Nissan Armada vehicle that belonged to Cosby's brother.

46.     Ms. Fisher subsequently returned to Nissan Armada and sat in the driver's seat.  She used Cosby's cell phone to exchange text messages with a friend.  In the interim, Cosby's phone received an incoming text message from another female acquaintance.

47.     Ms. Fisher was upset and angered by the incoming text message.

48.     When Cosby entered the Nissan Armada some minutes later, he sat in the passenger seat.  The couple then departed the premises around 10:00 p.m., with the intent to return to Ms. Fisher's residence.

49.     Cosby did not consume any alcohol while at the social gathering and was not intoxicated when he and Ms. Fisher left the premises.

50.     Ms. Fisher drove the Nissan Armada from the gathering on River Road in Cumberland County to a point near the intersection of River Road and North Main Street in Cumberland County.

51.      Shortly before she reached the stoplight at the intersection, Ms. Fisher slowed and then abruptly exited the vehicle without first placing the vehicle in park.

52.     Ms. Fisher then ran to the bridge that spanned the Appomattox River.

53.     It appeared to Cosby that Ms. Fisher jumped over the bridge railing.

8

54.     Fearing for Ms. Fisher's safety, Cosby focused on the need to immediately look for Ms. Fisher.

55.     Because the Nissan Armada was in the middle of the roadway and to prevent the vehicle from rolling, Cosby got into the driver's seat and parked the vehicle in a gravel area on the Cumberland County side of the bridge.

56.     At approximately 10:13 p.m., Police Department officers were dispatched to the intersection of River Road and North Main Street for a possible domestic situation.

57.     While Cosby was reaching inside the Nissan Armada for his cell phone, Officer Godsey arrived on the scene in his patrol car.

58.     Officer Godsey activated his lights and stopped his patrol car directly behind the Nissan Armada.

59.     By this maneuver, Officer Godsey blocked in the Nissan Armada and prevented the vehicle from leaving the scene.

60.     Cosby and Officer Godsey walked on the bridge and looked down in an attempt to locate Ms. Fisher.

61.     Still under the belief that Ms. Fisher jumped over the bridge railing, Cosby went back toward his vehicle to look for Ms. Fisher under the bridge.

62.     At approximately 10:26 p.m., Officer Hoyle arrived on the scene in his patrol car.

63.     The Officers asked Cosby if Ms. Fisher had any local friends, and Cosby told the Officers that Scarlett Varner ("Ms. Varner"), a co-worker of Ms. Fisher, lived a few blocks away.

64.     Cosby recited Ms. Varner's address to Officer Godsey.

65.     Officer Godsey directed Officer Hoyle to "watch" Cosby.  Officer Godsey then left the scene in his patrol car to look for Ms. Fisher.

66.     When left alone with Officer Hoyle, Cosby opened the back door of the Nissan Armada and took a few drinks from a liquor bottle that he had purchased earlier that day.

67.     This was the first time that evening that Cosby consumed alcohol.

68.     While standing aside the Nissan Armada, Cosby observed a blinking light on the dash cam attached to Officer Hoyle's patrol car.

69.     The blinking light on the dash cam attached to Officer Hoyle's patrol car signaled that the dash camera was on and that a video of the encounter was being taken.

70.     The dash cam on Officer Hoyle's patrol car recorded the encounter between the Defendant Officers and Cosby for the entire duration of the time that Officer Hoyle's patrol car parked was at the scene.

71.     Cosby asked Officer Hoyle for his Mag Light, which he then took under the bridge to look for Ms. Fisher.

72.     Several minutes later, Officer Godsey arrived back on the scene.

73.     At that time, Officer Godsey called Cosby back to the Nissan Armada and informed Cosby that Ms. Fisher was not at Ms. Varner's residence.

74.     A call came over the police radio that Ms. Fisher had been located coming out of Plank Road, approximately 100 yards from Cosby's location.

75.     Ms. Fisher walked with law enforcement officers to a point within Cosby's general proximity.

76.     Upon observing that Ms. Fisher appeared to be in sound physical condition, Cosby attempted to depart from the scene on foot.

77.      However, Officer Godsey prevented Cosby from departing the scene by stating that he smelled like alcohol.

10

78. Officer Godsey then directed Cosby to take field sobriety tests.

79. At approximately 11:33 p.m., Officer Bourne arrived on the scene in his patrol car. He departed a few minutes later.

80. Upon the conclusion of the field sobriety tests, Cosby was placed under arrest for a third offense DUI within five years.

81. At the time of arrest, Officer Godsey stated to Cosby, "I told you to leave her [Ms. Fisher] alone."

82. This statement referenced the encounter (discussed above) that Cosby had with Officer Godsey, Officer Hoyle, and two other Police Department officers two weeks before, on October 10, 2012, and the warning that Officer Godsey then issued to Cosby concerning Ms. Fisher.

83. As this statement reflects, Officer Godsey arrested Cosby on October 24, 2012, in accordance with the Police Department custom or policy of harassing, threatening, and punishing individuals who engage in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a fellow Police Department officer.

84. Officer Godsey's statement also demonstrates that Cosby was arrested on October 24, 2012 in accordance with the Police Department custom or policy to harass, threaten, and punish Farmville residents who have a prior criminal record, such as Cosby, without cause.

### The Issuance of False Police Reports

85. The Incident Report prepared by Officer Godsey falsely states that when Officer Godsey arrived at the scene, he personally observed the Nissan Armada "backing into the roadway on River Road just below the intersection with North Main St."  (*See* Farmville Police Department Incident Report, attached hereto as Exhibit A.)

11

86.     Also, the Incident Report falsely states: "This Officer witnessed the driver as Thaddeus Cosby of Cosby Lane, Farmville, Virginia." (Exhibit A.)

87.     Specifically, the Criminal Complaint that Officer Godsey took out against Cosby on October 24, 2012 states: "On this date this officer effected a traffic stop on a Nissan SUV. Lic # WZN-5874 at River Road/N. Main St.  Thaddeus D. Cosby was found to be the driver." (*See* Criminal Complaint, attached hereto as Exhibit B.)

**The Defendant Officers' Intentional Withholding of Exculpatory Video Evidence**

88.     The blinking light on Officer Hoyle's patrol car signaled that a video was being recorded of the encounter between the Defendant Officers and Cosby that occurred on the evening of October 24, 2012.

89.     However, in a letter written in response to a subpoena duces tecum issued to the Police Department, Officer Bourne falsely stated that neither the "Farmville Police Department nor its Officers holds any video evidence of the case: Commonwealth of Virginia v. Thaddeus Darnell Cosby." (*See* Officer Bourne's letter, attached hereto as Exhibit C.)

90.     In another letter dated April 3, 2013,which was written in response to the subpoena duces tecum issued to the Police Department, Officer Hoyle stated that Officer Godsey's patrol car did not have a video recording system, and that Officer Hoyle's patrol car was the only one that was equipped with a video system as of October 24, 2012.  (*See* Officer Hoyle's letter, attached hereto as Exhibit D.)

91.     Officer Hoyle's letter further states: "I responded to the area in an attempt to locate the female subject that exited the vehicle.  I did not activate my emergency lights on arrival, which is why there is no video footage of the incident.  I pulled my patrol vehicle out of the roadway into the parking area on River Road.  I then began to assist in the search for the female subject." (Exhibit D.)

12

92.     Officer Hoyle's written statement that no video footage of the incident was created was false.

93.     On May 20, 2019  after Cosby had served his full five-year sentence of imprisonment ฿ Cosby taped am oral conversation that he had with Officer Hoyle about his October 24, 2012 arrest.  An audio recording transcription of this conversation is attached hereto as Exhibit E.

94.     During that conversation, Officer Hoyle admitted that a dash cam video had, in fact, been made of the October 24, 2012 encounter between the Defendant Officers and Cosby.

95.     Long before Cosby's criminal trial, Defendant Officers, Unknown Officers, and/or Captain Stimpson knew that a video of the encounter of October 24, 2012 had been taken by the dash cam on Officer Hoyle's patrol car, that said video tended to substantiate Cosby's account of the facts, and that the video also tended to show that the statements Officer Godsey made in the Incident Report and Criminal Complaint about Cosby's actions were false.

96.     Despite this knowledge and for the purpose of depriving Cosby of the use of the video at trial, Defendant Officers, Unknown Officers, and/or Captain Stimpson intentionally excluded it from the investigative files turned over to the CAO and Prosecutor Greer.

97.     Due to the intentional, bad faith, or, in the alternative, reckless, misconduct of Defendant Officers, Unknown Officers, and/or Captain Stimpson, the video remained concealed from Cosby and his attorneys for the next seven years.

98.     A reasonable law enforcement officer in the position of Defendant Officers, Unknown Officers, or Captain Stimpson would have known that such exculpatory and impeachment evidence and information had to be produced to Commonwealth prosecutors so that it could be

provided to Cosby, and that intentionally and in bad faith, or, in the alternative, recklessly, failing to do so would violate Cosby's constitutional rights.

99.     Cosby's attorneys had no knowledge or proof that the video taken by the dash cam on Officer Hoyle's patrol car existed, and they relied on the CAO's open file policy and its representations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that no discoverable material had been withheld.

### Prosecution of Case in Prince Edward County

100.     The criminal acts alleged against Cosby occurred wholly in Cumberland County.

101.     The indictment incorrectly stated that the acts occurred in Prince Edward County.

102.      The CAO and Prosecutor Greer prosecuted the criminal case against Cosby.

103.     The prosecutorial authority of the CAO and Prosecutor Greer extends only to the limits of Prince Edward County.  *See* Virginia Code § 15.2-1627.

104.     The Prince Edward County Circuit Court did not enter an order of appointment for the CAO or Prosecutor Greer as a special prosecutor in the case against Cosby.

105.     Therefore, the CAO and Prosecutor Greer had no authority to prosecute the case against Cosby.  *See* Virginia Code §§ 19.2-155, 19.2-156.

### Cosby's Motion to Suppress and Issuance of Complaint with Captain Stimpson

106.     A suppression hearing was held on September 26, 2013.

107.     During the suppression hearing, Officer Godsey falsely testified that:  (1) he personally observed Cosby operate the Nissan Armada on October 24, 2012; (2) his encounter with Cosby was consensual rather than custodial because he pulled up alongside the Nissan Armada, he had not activated his emergency equipment, and he had not stopped Cosby; (3) he remained with Cosby at all times from the moment he arrived on the scene until he arrested Cosby; (4) he never

14

departed the scene to ascertain whether Ms. Fisher had gone to Ms. Varner's residence; and (5) Cosby did not drink any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher.

108.    Following the suppression hearing and prior to trial, Cosby lodged a complaint with Captain Stimpson and the Police Department.

109.    Cosby alleged to Captain Stimpson and the Police Department that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after the traffic stop on October 24, 2012.

110.    Captain Stimpson conducted an investigation concerning the allegations made in Cosby's complaint by, among other things, interviewing Officer Godsey, Officer Hoyle, Officer Bourne, and other Unknown Officers.

111.    Prior to Cosby's criminal trial, Captain Stimpson, the Police Department, and/or the Town knew or in the exercise of reasonable diligence should have known that the version of events related by Officer Godsey in the Incident Report attached as Exhibit A, the Criminal Complaint attached as Exhibit B, and in his oral testimony given at the suppression hearing was materially false, and that a video of the October 24, 2012 encounter between the Defendant Officers and Cosby had been taken by the dash cam on Officer Hoyle's patrol car.

112.    Despite this knowledge, Captain Stimpson, the Police Department, and/or the Town did not provide any information concerning the investigation to Cosby's counsel nor did they take any steps to secure the withdrawal of the felony DUI charge against Cosby prior to trial.

113.    Prosecutor Greer had actual knowledge of the contents of the complaint that Cosby lodged with Captain Stimpson and the Police Department.

114. Upon information and belief, Prosecutor Greer did not take any procedural steps to investigate the merits of Cosby's complaint.

115. Prior to Cosby's criminal trial, Prosecutor Greer knew or in the exercise of reasonable diligence should have known that the version of events related by Officer Godsey in the Incident Report attached as Exhibit A, the Criminal Complaint attached as Exhibit B, and in his oral testimony given at the suppression hearing was materially false.

116. Despite this knowledge, Prosecutor Greer did not take any steps to secure the withdrawal of the felony DUI charge against Cosby prior to trial.

117. Prosecutor Greer and the CAO did not inform Cosby's counsel of Cosby's complaint to Captain Stimpson and the Police Department or of any investigation of that complaint.

### Cosby's Criminal Trial

118. A trial of the matter was held on October 4, 2013.

119. During the trial, Officer Godsey falsely testified that: (1) he personally observed Cosby operate the Nissan Armada on October 24, 2012; (2) his encounter with Cosby was consensual rather than custodial because he pulled up alongside the Nissan Armada, he had not activated his emergency equipment, and he had not stopped Cosby; (3) he remained with Cosby at all times from the moment he arrived on the scene until he arrested Cosby; (4) he never departed the scene to ascertain whether Ms. Fisher had gone to Ms. Varner's residence; and (5) Cosby did not drink any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher.

120. Officer Godsey's testimony of observing Cosby operate the Nissan Armada was contradicted by records that show he was dispatched to the scene at 10:13 p.m., which was after the vehicle was parked.

16

121.    Officer Godsey's testimony that he did not leave Cosby's presence is contradicted by Ms. Varner's trial testimony.  Ms. Varner testified that Officer Godsey showed up at her residence unannounced around 10 p.m. on October 24, 2012 and asked if Ms. Fisher was there.

122.    Officer Godsey's testimony that the traffic stop was consensual rather than custodial was contradicted by the trial testimonies of two witnesses, Cheryl Boswell and Niveka Boswell, her daughter.

123.    Cheryl Boswell and Niveka Boswell both testified that Officer Godsey's patrol car was parked directly behind the Nissan Armada so as to block in Cosby and Ms. Fisher's vehicle, and they also testified that the lights on the patrol car were flashing.

124.    Officer Godsey's testimony that Cosby did not drink any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher is contradicted by the trial testimonies of Cosby and Wanda Flood ("Ms. Flood").

125.    Cosby testified that he drank alcohol for the first time that evening while standing outside the Nissan Armada during the search for Ms. Fisher in an effort to calm his nerves and due to his worry about Ms. Fisher's safety.

126.    Ms. Flood testified that she recovered the contents of the Nissan Armada on October 26, 2012, and that a partially full liquor bottle was among the contents she recovered.

127.    During the suppression hearing and trial, Officer Hoyle falsely testified that:  (1) he never activated his emergency lights and, therefore, his dash cam video had not been triggered to operate on his patrol car; (2) he was on the scene for only a few minutes duration when in actuality he was there for almost an hour; (3) Officer Godsey remained with Cosby at all times during the search for Ms. Fisher on October 24, 2012; and (4) Cosby had not drunk any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher.

17

128.    During the trial, Captain Stimpson falsely testified that Cosby confessed that he drove the Nissan Armada while under the influence of alcohol on the evening of October 24, 2012.

129.    Captain Stimpson also failed to testify or to otherwise inform the court that his investigation of the complaint that Cosby lodged with the Police Department and him revealed that the version of events related by Officer Godsey in the Incident Report attached as Exhibit A, the Criminal Complaint attached as Exhibit B, and in his oral testimony given at the suppression hearing and the trial was materially false, and that a video of the October 24, 2012 encounter between the Defendant Officers and Cosby had been taken by the dash cam on Officer Hoyle's patrol car.

130.    At no point did Officers Godsey, Hoyle, or Bourne, Captain Stimpson, or any other law enforcement officers with the Police Department, disclose the exculpatory and impeachment information and evidence in the form of the video taken by the dash cam on Officer Hoyle's patrol car of the October 24, 2012 encounter between Defendant Officers and Cosby.

131.    Due to wrongful conduct by Defendant Officers, Unknown Officers, and/or Captain Stimpson, as set forth above, Prosecutor Greer was able to elicit false testimony from Officer Godsey, Officer Hoyle, and Captain Stimpson and to use such false testimony to persuade the jury that Cosby operated the Nissan Armada on October 24, 2012 while under the influence of alcohol.

132.    If Defendant Officers, Unknown Officers, and/or Captain Stimpson had provided the video of the October 24, 2012 encounter with Cosby to the CAO and/or Prosecutor Greer, then said video would have been turned over to Cosby and his attorneys as legally required.

133.    If the dash cam video had been provided, Officer Godsey's incorrect Incident Report, Criminal Complaint, and contrary oral testimony would have been immediately impeached because the video would have proven that his testimony was false.

18

134.   If the dash cam video had been provided, Officer Hoyle's contrary oral testimony would have been immediately impeached because the video would have proven that his testimony was false.

135.   If the dash cam video had been provided, Captain Stimpson's oral testimony would have been impeached because the video would have proven his statement that Cosby confessed to driving the Nissan Armada while under the influence of alcohol on the evening of October 24, 2012 was false.

136.   If the dash cam video had been provided, it would have shown that Officer Godsey's and Officer Hoyle's testimonies were false because the video would have disclosed:  (1) no law enforcement officer was present at any time that the Nissan Armada vehicle in question was being driven; (2) Officer Godsey's patrol car was parked directly behind the Nissan Armada in a manner that blocked in the Nissan Armada and prevented the vehicle from departing the scene; (3) the emergency lights had been activated on both Officer Godsey's and Officer Hoyle's patrol cars; (4) Officer Godsey left the scene to look for Ms. Fisher for some time; (5) while Officer Godsey was not at the scene, Cosby was left alone with Officer Hoyle; and (6) during the search for Ms. Fisher, Cosby reached in the Nissan Armada, got out a liquor bottle, and drank alcohol from the bottle while standing beside the vehicle.

137.   The dash cam video would have been uncontradicted evidence that Cosby did not unlawfully drive the Nissan Armada while under the influence of alcohol.

138.   Prosecutor Greer relied heavily on the trial testimony and work experience of Officer Godsey in closing.

139.   The jury plainly relied on Officer Godsey's testimony in finding Cosby guilty of a felony DUI, recommending a sentence of five years in prison, and Cosby serving five years.

140.    During voir dire, Juror Emert stated that he knew Cosby in a professional capacity.

141.    Juror Emert falsely represented to the court and to Cosby's counsel that his acquaintance with Cosby would not hinder him from being objective, fair, and impartial in weighing and determining the facts of the case.

142.    Juror Emert's prior dealings with Cosby went beyond mere traveling in the same business circle.  Previously, in 2007, Juror Emert had issued criminal warrants against Cosby for alleged unpaid debts that Cosby owed to him.  The warrants resulted in Cosby's arrest and prosecution.

143.    Moreover, during voir dire of the present case, Juror Emert failed to disclose his conflict of interest in the case based on his prior criminal prosecution plus his personal animosity toward Cosby.

144.    As a result, the jury verdict was further tainted by Juror Emert's bias and animosity against Cosby.

145.    If the extent of Juror Emert's prior criminal prosecution of Cosby had been disclosed in voir dire, then Juror Emert would have been excused from the jury, and the jury would likely have reached a different verdict or at least imposed a lesser sentence.

146.    Also during voir dire, Prospective Juror Harris, outside the presence of the other prospective jurors, stated to both Prosecutor Greer and Cosby's counsel that in his experience, law enforcement officers employed by the Police Department had engaged in the long-term practice or custom of making false charges of DUI or public drunkenness against susceptible Farmville-area residents and students.

**The Wrongful Conduct by Defendant Officers, Unknown Officers, and
Captain Stimpson Prevented Cosby from Obtaining Post-Conviction Relief**

20

147.    As experienced law enforcement officers, Defendant Officers and Unknown Officers knew that they had a constitutional duty to turn over the video of the October 24, 2012 encounter with Cosby that was taken by the dash cam on Officer Hoyle's patrol car to the CAO and/or Prosecutor Greer.  As experienced law enforcement officers, they also that they had a constitutional duty to inform the court and Cosby's counsel that they were in possession of the video.

148.    The Defendant Officers' and Unknown Officers' actions are in willful, conscious, and in bad faith disregard of their constitutional duties and violate the constitutional due process rights of Cosby, with the Defendant Officers' and Unknown Officers' failure to disclose the information and video to the CAO, Prosecutor Greer, the court, or Cosby's counsel.

149.    As Captain of the Police Department and an experienced law enforcement officer, Captain Stimpson knew that he had a constitutional duty to turn over the video of the October 24, 2012 encounter with Cosby that was taken by the dash cam on Officer Hoyle's patrol car to the CAO and/or Prosecutor Greer.  As Captain of the Police Department and an experienced law enforcement officer, Captain Stimpson also that he had a constitutional duty to inform the court and Cosby's counsel that he was in possession of the video.

150.    The actions of Defendant Officers, Unknown Officers, and/or Captain Stimpson are in willful, conscious, and in bad faith disregard of their constitutional duties and violate the constitutional due process rights of Cosby, with the failure to disclose the information and video by the Defendant Officers, Unknown Officers, and Captain Stimpson to the CAO, Prosecutor Greer, the court, or Cosby's counsel.

151.    On May 20, 2019, after Cosby had served his full five-year prison sentence, Officer Hoyle finally admitted the existence of the video of the encounter to Cosby.  (*See* Exhibit E.)

152.    After Cosby filed a habeas petition, a hearing was held on February 8, 2018.

21

153.    At the conclusion of the hearing, the court expressed grave concern about the lack of video evidence and opined that the absence of such evidence was fundamentally unfair to Cosby.

154.    However, the court stated that it could not redress the problem in part because there was no proof that a police video of the incident had, in fact, been taken.

155.    If the dash cam video had been provided to the CAO or the court, then Cosby's habeas petition would have been granted.

156.    Cosby lost five of the prime years of his life in prison.  During that time, he was denied the opportunity to have a career or to have meaningful family relationships.

157.    The mere fact that Cosby was accused and convicted soured the majority of his familial and social relationships, and it is simply too late for Cosby to repair many of those relationships he had before his conviction.

158.    While incarcerated, Cosby was forced to live in inhumane conditions, including being denied privacy and subjected to daily humiliation and harsh treatment.

159.    Cosby suffered greatly knowing he was in prison even though he was innocent.

160.    Presently, Cosby continues to suffer from extreme emotional distress and anguish as a result of his unjust and unlawful conviction.

161.    Cosby has nightmares about his experience in prison, and he cries frequently about how much of his life he has lost.

162.    As a direct result of the fabrication and suppression of evidence by Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby was denied the most basic of his constitutional and fundamental human rights, his liberty.

### FIRST CAUSE OF ACTION
### 42 U.S.C. ' 1983  Β Fourteenth Amendment
### Denial of Due Process: Fabrication of Evidence

22

**(Against All Defendant Officers, Unknown Officers, and Captain Stimpson)**

163.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

164.    Defendant Officers, Unknown Officers, and/or Captain Stimpson initiated, or caused the initiation of, criminal proceedings against Cosby.

165.    Defendant Officers, Unknown Officers, and/or Captain Stimpson created false information and fabricated evidence likely to influence the jury,

166.    Officer Godsey fabricated testimony that (1) he personally observed Cosby operate the Nissan Armada on October 24, 2012; (2) his encounter with Cosby was consensual rather than custodial because he alleged pulling alongside the Nissan Armada, he had not activated his emergency equipment, and he had not stopped Cosby; (3) he remained with Cosby at all times from the moment he arrived on the scene until he arrested Cosby; (4)  he never departed the scene to ascertain whether Ms. Fisher had gone to Ms. Varner's residence; and (5) Cosby did not drink any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher.

167.    Officer Hoyle fabricated testimony that (1) he never activated his emergency lights and, therefore, he never triggered the operation of the dash cam on his patrol car; (2) that he was on the scene for only a few minutes duration when, in actuality, he was there for almost one hour; (3) Officer Godsey remained with Cosby at all times during the search for Ms. Fisher on October 24, 2012; and (4) Cosby did not drink any alcohol while standing outside the Nissan Armada during the search for Ms. Fisher.

168.    Captain Stimpson fabricated testimony that Cosby confessed to driving the Nissan Armada while under the influence of alcohol on the evening of October 24, 2012.

169.    The conduct of Defendant Officers, Unknown Officers, and/or Captain Stimpson in fabricating evidence proximately caused Cosby's detention and loss of liberty.

170.    Defendant Officers, Unknown Officers, and Captain Stimpson acted under pretense and color o f state law.

171.    Said acts by Defendant Officers, Unknown Officers, and/or Captain Stimpson were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.

172.    Defendant Officers, Unknown Officers, and/or Captain Stimpson acted willfully, knowingly, and with the specific intent to deprive Cosby of his constitutional rights secured by 42 U.S.C. ' 1983, and by the Fourteenth Amendment to the United States Constitution.

173.     Defendant Officers, Unknown Officers, and/or Captain Stimpson acted willfully, wantonly, and recklessly.

174.    As a direct and proximate result of the conduct of Defendant Officers, Unknown Officers, and/or Captain Stimpson in fabricating evidence, Cosby sustained the injuries and damages alleged herein, including serving five years in prison for a crime he did not commit.

### SECOND CAUSE OF ACTION
### 42 U.S.C. ' 1983  B Fifth and Fourteenth Amendment
### *Brady* Violation: Withholding Material Exculpatory Evidence
### (Against All Defendant Officers, Unknown Officers, and Captain Stimpson)

175.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

176.    The video of the October 24, 2012 incident taken by the dash cam from Officer Hoyle's patrol car is and was material exculpatory evidence.

177.    Had the video been disclosed to Cosby, there would have been a reasonable probability of a different outcome at trial, an acquittal of Cosby.

178.    Defendant Officers, Unknown Officers, and/or Captain Stimpson were aware that a video of the encounter of October 24, 2012 had been created by the dash cam on Officer Hoyle's patrol car.

179.    Defendant Officers, Unknown Officers, and/or Captain Stimpson had a duty to accurately record this information and give this material, exculpatory evidence to the CAO, Prosecutor Greer, and/or the court for its disclosure to Cosby and his counsel.

180.    Defendants Officers, Unknown Officers, and/or Captain Stimpson did not accurately document the circumstances surrounding Cosby's arrest, including the fact that the traffic stop was not consensual but rather was custodial in nature, as required.

181.    Further, Defendant Officers, Unknown Officers, and/or Captain Stimpson failed to inform the CAO, Prosecutor Greer, the court, or Cosby's counsel of the video that had been created by the dash cam on Officer Hoyle's patrol car.

182.    Defendant Officers, Unknown Officers, and/or Captain Stimpson acted under pretense and color of state law, and acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Cosby of his constitutional rights.

183.    As a direct and proximate result of the misconduct and abuse by Defendant Officers, Unknown Officers, and/or Captain Stimpson, detailed above, Cosby sustained the injuries and damages herein alleged, including serving five years in prison for a crime he did not commit.

### THIRD CAUSE OF ACTION
### 42 U.S.C. ' 1983 B Fourteenth Amendment
### Failure to Intervene
### (Against All Defendant Officers, Unknown Officers, and Captain Stimpson)

184.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

185.    To the extent that any Defendant Officer, Unknown Officer, or Captain Stimpson was not directly responsible for the withholding of exculpatory evidence or the fabrication of evidence, described above, such Defendant Officer(s), Unknown Officer(s), and/or Captain Stimpson had a realistic opportunity to intervene and prevent misconduct by the other Defendant Officers, Unknown Officers, and/or Captain Stimpson that caused preventable harm to Cosby.

196.    Any reasonable officer in the position of the Defendant Officers, Unknown Officers, and/or Captain Stimpson would have known that Cosby's constitutional rights were being violated by the fabrication of evidence and/or withholding of exculpatory evidence.

187.    Not one Defendant Officer, Unknown Officer, or Captain Stimpson took a single step to intervene and prevent any of the constitutional violations suffered by Cosby.

188.    Defendant Officers, Unknown Officers, and Captain Stimpson acted under pretense and color of state law, and acted beyond the scope of his/their authority and jurisdiction to willfully, knowingly, and intentionally deprive Cosby of his constitutional rights.

189.    As a direct and proximate result of the misconduct and abuse by Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby sustained the injuries and damages herein alleged, including serving five years in prison for a crime he did not commit.

**FOURTH CAUSE OF ACTION**
**42 U.S.C. ' 1983 B Fourteenth Amendment**
**Conspiracy to Violate Cosby's Constitutional Rights**
**(Against All Defendant Officers, Unknown Officers, and Captain Stimpson)**

190.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

26

191.    Defendant Officers, Unknown Officers, and/or Captain Stimpson agreed among themselves by words and/or actions to act in concert in order to deprive Cosby of his constitutional rights to a fair trial and to deprive him of due process.

192.    At all relevant times, Defendant Officers, Unknown Officers, and Captain Stimpson were acting under color of state law.

193.    Defendant Officers, Unknown Officers, and/or Captain Stimpson agreed among themselves by words and/or actions to act jointly in concert to withhold exculpatory and impeachment evidence from the CAO, Prosecutor Greer, the court and by extension from Cosby and his counsel, for the purpose of depriving Cosby of the use of that evidence at trial.

194.    As a result of their actions, Cosby was deprived of his rights to a fair trial and to due process under the Fourteenth Amendment to the United States Constitution.

195.    Subsequent to Cosby's conviction, Defendant Officers, Unknown Officers, and/or Captain Stimpson agreed among themselves by words and/or actions, in furtherance of the aims of the conspiracy, to act jointly in concert and to continue to withhold and conceal exculpatory and impeachment evidence from the CAO, Prosecutor Greer, the court, and by extension from Cosby and his counsel, for the purpose of depriving Cosby of the use of that evidence post-conviction.

196.    As a result of their actions, Cosby was deprived of his rights to a fair trial and to due process under the Fourteenth Amendment to the United States Constitution.

197.    Defendant Officers, Unknown Officers, and Captain Stimpson engaged in the following overt acts, among others, which were done in the furtherance of the aims of the conspiracy:

a.      Officer Godsey deliberately fabricated inculpatory evidence regarding the identity of the driver of the Nissan Armada on the evening of October 24, 2012;

b.      Officer Godsey deliberately fabricated inculpatory evidence regarding the nature of his encounter with Cosby, claiming that the encounter was consensual and not custodial and;

c.      Officer Godsey deliberately and falsely testified that he pulled up alongside the Nissan Armada, did not activate his emergency equipment, and he did not stop Cosby.  Further, Officer Godsey deliberately concealed the fact that he parked his patrol car directly behind the Nissan Armada with the emergency lights flashing and thereby blocked in the vehicle and prevented it from leaving the scene;

d.      Officers Godsey and Hoyle deliberately fabricated inculpatory evidence to suggest that Cosby was in a state of intoxication during the operation of a vehicle on the evening of October 24, 2012.  In addition, Officers Godsey and Hoyle deliberately concealed the fact that Cosby drank from a liquor bottle while standing beside the Nissan Armada during the search for Ms. Fisher that occurred on the evening of October 24, 2012;

e.      Captain Stimpson deliberately covered up and suppressed the results of the investigation that he conducted of Defendant Officers' conduct during the October 24, 2012 encounter with Cosby;

28

f.      Captain Stimpson deliberately fabricated inculpatory evidence that Cosby confessed to driving a motor vehicle under the influence of alcohol on the evening of October 24, 2012;

g.      Defendant Officers, Unknown Officers, and/or Captain Stimpson deliberately failed to disclose exculpatory and impeachment evidence to the CAO, Prosecutor Greer, the court, and Cosby and his counsel, including the video taken of the October 24, 2012 encounter by the dash cam on Officer Hoyle's patrol car;

h.      Defendant Officers, Unknown Officers, and/or Captain Stimpson each concealed the existence of the video of the encounter with Cosby taken by the dash cam on Officer Hoyle's patrol car on October 24, 2012 despite repeated requests by Cosby and his counsel to the CAO and the Police Department, both before and after his conviction, to turn over all exculpatory evidence, including specific requests for video of the encounter taken by any of Defendant Officers' patrol cars;

i.      Defendant Officers, Unknown Officers, and/or Captain Stimpson each concealed the fact that each Officer or Defendant separately made false statements to the CAO, Prosecutor Greer, and the court, and that Officers Godsey and Hoyle and Captain Stimpson provided false trial testimony, a fact unequivocally demonstrated by existence of the concealed video;

j.      Defendant Officers, Unknown Officers, and/or Captain Stimpson repeatedly informed the CAO and Cosby's counsel that all investigative materials had been provided to Cosby and his counsel when, in fact, they knew that the

video of October 24, 2012 taken by the dash cam on Officer Hoyle's patrol car had not been provided.

198.   As a result of these and other overt acts done by Defendant Officers, Unknown Officers, and/or Captain Stimpson in furtherance of the aims of the conspiracy, Cosby was deprived of his rights to a fair trial and to due process under the Fourteenth Amendment to the United States Constitution, and lost his liberty for five years.

199.   Cosby's wrongful conviction and incarceration were the reasonably foreseeable results of the conspiracy between the Defendant Officers, Unknown Officers, and/or Captain Stimpson.

200.   As a direct and proximate result of the conspiracy between the Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby sustained the injuries and damages alleged herein, including serving five years in prison for a crime he did not commit.

**FIFTH CAUSE OF ACTION**
**42 U.S.C. ' 1983 Β Article IV, and the First, Fifth, and Fourteenth Amendments**
**Deprivation of Right of Access to the Courts**
**(Against All Defendant Officers, Unknown Officers, and Captain Stimpson)**

201.   Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

202.   The actions of Defendant Officers, Unknown Officers, and/or Captain Stimpson to (1) withhold exculpatory and impeachment evidence and information from the CAO, Prosecutor Greer, the court and, by extension, from Cosby and his counsel, for the purpose of depriving Cosby of the use of that evidence at trial; (2) continue to withhold and conceal exculpatory and impeachment evidence and information from the CAO, the court, and from Cosby and his counsel, for the purpose of depriving Cosby of the use of that evidence post-conviction; and (3) cover up the false testimonies

of Officers Godsey and Hoyle and/or Captain Stimpson for the purpose of depriving Cosby of a fair trial, resulted in a deprivation of Cosby's right to due process under the Fourteenth Amendment to the United States Constitution,

203.    By ignoring the affirmative obligation to disclose these facts in every year after Cosby's arrest and conviction, specifically including the years 2013 through 2019, Defendant Officers, Unknown Officers, and/or Captain Stimpson violated Cosby's clearly established right to meaningful access to the courts.

204.    No reasonable law enforcement officers in Defendant Officers' and Unknown Officers' positions, or in Captain Stimpson's position, could have believed it lawful not to come forward with evidence they knew of that would free an innocent person such as Cosby even one day sooner, particularly in the face of repeated entreaties for this evidence.

205.    In addition, Cosby could have used the subject evidence and information to secure adequate, effective, and meaningful access to courts via actions brought in the civil courts of the Commonwealth of Virginia seeking redress and compensation for the wrongful conduct explained above.

206.    This official action was undertaken, inter alia, with the intent or knowledge that it would obstruct Cosby's legitimate efforts to vindicate himself through judicial redress, or with reckless disregard for the same.

207.    As a result, Defendant Officers, Unknown Officers, and/or Captain Stimpson violated Cosby's right of access to the courts, in violation of his rights under Article IV, and the First, Fifth, and Fourteenth Amendments to the United States Constitution.

208.     Cosby's conviction and incarceration, and his inability to obtain meaningful judicial redress, were the reasonably foreseeable results of the wrongful conduct of Defendant Officers, Unknown Officers, and/or Captain Stimpson.

209.     As a direct and proximate result of the misconduct and abuse by Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby sustained the injuries and damages alleged herein, including serving five years in prison for a crime he did not commit.

**SIXTH CAUSE OF ACTION**
**42 U.S.C. ' 1983 в *Monell* Claim:**
**Unconstitutional Customs, Practices, and Policies**
**(Against the Town and Police Department)**

210.     Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

211.     The Town and/or the Police Department, by and through their responsible final policymakers, including Captain Stimpson, jointly and severally had the legal duty of establishing, enforcing, directing, supervising, and controlling policies, customs, practices, usages, and/or procedures to be used by the Police Department's law enforcement officers and employees, such that the responsible final policymakers' acts represent the official policy of the Town and/or the Police Department.

212.     The responsible final policymakers' acts and omissions herein, including those of Captain Stimpson, fostered and encouraged an atmosphere of unconstitutional behavior and procedures toward Farmville-area residents who have a prior criminal record, and/or individuals who engage in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer, and/or Farmville-area residents and students who were susceptible to false charges of DUI or public

32

drunkenness which represented the custom, policy, and/or practice of the Town and/or Police Department, such that Cosby's constitutional deprivations alleged herein were in furtherance of the custom, policy, and/or practice of the Town and/or Police Department.

213.    Specifically, upon information and belief, at all relevant times, the Town and/or the Police Department, by and through their responsible final policymakers, including Captain Stimpson, created, maintained, encouraged, and/or condoned the following unconstitutional customs, policies, and/or practices:

      a.    Law enforcement officers employed by the Police Department systematically singled out, accused, and investigated Farmville-area residents with a prior criminal record for current criminal activities;

      b.    Law enforcement officers employed by the Police Department failed to disclose to prosecutors information that was favorable to Farmville-area resident defendants with a prior criminal record;

      c.    Law enforcement officers employed by the Police Department systematically committed and permitted witnesses to commit perjury against Farmville-area resident suspects with a prior criminal record;

      d.    Law enforcement officers employed by the Police Department routinely failed to come forward with evidence of innocence after the conviction of Farmville-area resident defendants with a prior criminal record, notwithstanding direct requests for any such evidence;

      e.    Law enforcement officers employed by the Police Department routinely ignored requests for evidence and other materials relating to an investigation of Farmville-area resident suspects with a prior criminal record, provided

grossly incomplete materials, or removed potentially exculpatory materials from what was provided;

f. Law enforcement officers employed by the Police Department routinely destroyed, misplaced, released, or otherwise failed to properly store, index, and/or preserve documentary and physical evidence pertaining to a "closed" investigation of a Farmville-area resident suspect with a prior criminal record;

g. Law enforcement officers employed by the Police Department systematically singled out, accused, and investigated individuals who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer;

h. Law enforcement officers employed by the Police Department failed to disclose to prosecutors information that was favorable to criminal defendants who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer;

i. Law enforcement officers employed by the Police Department systematically committed and permitted witnesses to commit perjury against suspects who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer;

j.     Law enforcement officers employed by the Police Department routinely failed to come forward with evidence of innocence after the conviction of criminal defendants who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer;

k.     Law enforcement officers employed by the Police Department routinely ignored requests for evidence and other materials relating to an investigation of suspects who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer, provided grossly incomplete materials, or removed potentially exculpatory materials from what was provided;

l.     Law enforcement officers employed by the Police Department routinely destroyed, misplaced, released, or otherwise failed to properly store, index, and/or preserve documentary and physical evidence pertaining to a "closed" investigation of a suspect who engaged in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer.

m     Law enforcement officers employed by the Police Department routinely proffered false criminal charges of DUI and public drunkenness against susceptible Farmville-area residents and students.

214.    Cosby's efforts to obtain exculpatory facts and evidence were met with multiple instances of reckless obstruction spanning a period of over six years, and involved multiple officers and employees within the Police Department.

215.    The Town and/or the Police Department, at all relevant times, by and through their final responsible policymakers, including Captain Stimpson, had actual or constructive knowledge of the misconduct alleged herein, but failed, as a matter of specific intent or deliberate indifference, to stop or correct such unconstitutional customs, policies, and/or practices.

216.    The unconstitutional practices of the Town and/or the Police Department directly and proximately caused Cosby's constitutional deprivations, including his unfair trial, wrongful conviction, denial of his motion to suppress, denial of his appeal, and denial of his habeas petitions, as well as his five-year imprisonment for a crime he did not commit.

217.    The failure by the Town and/or the Police Department to correct the known unconstitutional customs, policies, and/or practices identified herein made the constitutional deprivations suffered by Cosby almost bound to happen, sooner or later.

### SEVENTH CAUSE OF ACTION
### 42 U.S.C. ' 1983 в *Monell* Claim for Unconstitutional
### and Inadequate Training and Supervision
### (Against the Town and Police Department)

218.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

219.    The Town and/or the Police Department, at all relevant times, by and through their responsible final policymakers, including Captain Stimpson, jointly and severally, had the legal duty to appropriately train and/or supervise Police Department law enforcement officers and employees.

220.    The Town and/or the Police Department, at all relevant times, by and through their final responsible policymakers, including Captain Stimpson, failed to properly train and/or supervise law enforcement officers employed by the Police Department in conducting criminal investigations to ensure that they disclosed appropriate information to prosecutors.

221.    The Town and/or the Police Department, at all relevant times, by and through their final responsible policymakers, including Captain Stimpson, failed to properly train and/or supervise law enforcement officers and employees employed by the Police Department on the proper procedures for the following:

   a.    handling, storing, indexing, and preserving case files, including handling, storing, indexing, and preserving files after a case has been closed;

   b.    handling, storing, indexing, and preserving physical evidence, including handling, storing, indexing, and preserving physical evidence after a case has been closed;

   c.    responding to requests for evidence and other information relating to an investigation;

   d.    taking witness statements, transcribing witness statements, and turning over witness statements to the appropriate Commonwealth's Attorney's Office;

   e.    taking, preserving, labeling, storing, and documenting physical evidence, including videos taken by a dash cam on a patrol car;

   f.    turning over exculpatory and impeachment evidence to the appropriate Commonwealth's Attorney's Office in compliance with *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

37

222.    The failure by the Town and/or the Police Department to properly train and/or supervise their officers and employees in the areas described herein evidences a deliberate indifference to the rights of Cosby and the Town's other inhabitants.

223.    The need of the Town and/or the Police Department for more and/or different training in the areas described herein was obvious to the final responsible policymakers of the Town and/or the Police Department, including Captain Stimpson.

224.    Further, the Town and/or the Police Department, at all relevant times, by and through their final responsible policymakers, including Captain Stimpson, failed to properly discipline law enforcement officers employed by the Police Department, such as Defendant Officers and Unknown Officers, for acts of misconduct such as those related above, thereby permitting and encouraging acts of misconduct against civilians.

225.    Cosby's efforts to obtain exculpatory facts and evidence were met with multiple instances of reckless obstruction spanning more than six years, and involved multiple officers and employees within the Town and the Police Department, including Captain Stimpson.

226.    Ultimately, Officer Hoyle admitted to Cosby that a critical piece of exculpatory evidence, the video of Cosby's encounter with Defendant Officers on October 24, 2012, was in existence and was not turned over to the appropriate Commonwealth's Attorney's Office, the court, or Cosby.

227.    The failure of responsible policymakers of the Town and/or the Police Department, including Captain Stimpson, to adequately train and/or supervise Police Department officers and employees in the above-described areas directly and proximately caused Cosby's constitutional deprivations, including his unfair trial, wrongful conviction, the denial of his motion to suppress, his appeal, his habeas corpus petitions, and his five-year imprisonment for a crime he did not commit.

38

228.    The failure by the Town and/or the Police Department to properly train and/or supervise Police Department officers and employees in the areas described herein had the highly predictable consequence of resulting in the constitutional violations of the type that Cosby suffered.

**EIGHTH CAUSE OF ACTION**
**42 U.S.C. ' 1983 B Wrongful Prosecution Without Jurisdiction**
**(Against Prince Edward County, the CAO, and Prosecutor Greer)**

229.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

230.    The offices of the CAO and Prosecutor Greer are established by statute, and the parameters of their official authority are set forth in the Virginia Code and the Virginia Constitution art. VII, ' 4.

231.    Virginia Code ' 60.2-119 states that, with certain exceptions not applicable here: "All criminal actions for violation of any provision of this title, or of any rules or regulations issued pursuant to this title, shall be prosecuted by the attorney for the Commonwealth of the county or city in which the offense, or a part thereof, was committed[.]"

232.    Virginia Code ' 15.2-1627(B) provides that the Commonwealth's attorney and assistant attorney "shall be a part of the department of law enforcement of the county or city in which he is elected or appointed."

233.    Virginia Code ' 15.2-528 states that the "attorney for the Commonwealth . . . shall be charged with the enforcement of all criminal laws throughout the county."

234.    Although Virginia Code '' 19.2-249 and 19.2-250 extend venue for the trial of the case in certain circumstances, these statutes do not extend the territory of prosecutorial authority by

the Commonwealth's attorney and/or assistant attorney beyond the limits established by Virginia Code " 15.2-528 and 15.2-1627(B).

235.    Consequently, the statutory authority of the CAO and Prosecutor Greer to prosecute criminal cases is limited to the boundaries of Prince Edward County.  *See* Virginia Code § 15.2-1627.

236.    The entire sequence of acts and events on which the criminal prosecution of Cosby was based occurred wholly in Culpepper County.

237.    None of the acts or events on which the criminal prosecution of Cosby was based took place in Prince Edward County.

238.    The CAO and Prosecutor Greer lacked the statutory authority to prosecute Cosby for the crimes alleged against him the present case.

239.    By prosecuting Cosby for alleged crimes that occurred wholly within Culpepper County, the CAO and Prosecutor Greer exceeded their lawful jurisdiction and acted in an ultra vires manner.

240.    As a consequence, Cosby's judgment of conviction must be vacated and set aside.

**NINTH CAUSE OF ACTION**
**42 U.S.C. ' 1983 B Deprivation of Right to Fair Trial**
**(Against Prince Edward County, the CAO, and Juror Emert)**

241.     Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

242.    Cosby had a constitutional right to an impartial jury.  U.S. Const. amends. VI and XIV; Va. Const. art. 1, ' 8.

243.    During Cosby's trial, the impartiality of the jury was affected by Juror Emert's statements and expressions of opinion made to third parties. *See Haddad v. Commonwealth*, 229 Va. 325, 329, 329 S.E.2d 17, 19 (1985).

244.    Juror Emert was not impartial despite his promise to the court that his acquaintance with Cosby would not hinder him from being objective, fair, and impartial in weighing and determining the facts of the case.

245.    Instead, the facts show that Juror Emert had pre-judged the case against Cosby and had adjudicated him guilty before trial.

246.    Juror Emert's bias and animosity against Cosby affected the jury's verdict.  If Juror Emert's conflict of interest had been disclosed before the trial began, Juror Emert would have been excused from the jury, and the jury would likely have reached a different verdict or at least imposed a lesser sentence.

247.    Under the circumstances, Cosby's constitutional right to a fair trial was violated. Consequently, the judgment of conviction must be vacated and set aside.

### TENTH CAUSE OF ACTION
### Denial of Liberty Without Procedural Due Process
### (Against Prosecutor Greer and Captain Stimpson Individually)

248.     Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

240.    Captain Stimpson was under an affirmative obligation, as a matter of due process, to take the appropriate procedural steps to fully investigate the merits of Cosby's complaint alleging that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after Defendant Officers' traffic stop of October 24, 2012.

41

250.    At the conclusion of the investigation, Captain Stimpson had an affirmative obligation to inform Prosecutor Greer and the CAO of the meritorious nature of Cosby's complaint and to secure the withdrawal of the felony DUI charge against Cosby, as the charge was based on information that Captain Stimpson knew or should have known was false.

251.    Prosecutor Greer knew that Cosby issued a complaint to Captain Stimpson and the Police Department alleging that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after Defendant Officers' traffic stop on October 24, 2012.

252.    Prosecutor Greer was under an affirmative obligation, as a matter of due process, to take the appropriate procedural steps to fully investigate the merits of Cosby's complaint and to secure the withdrawal of the felony DUI charge against Cosby, as the charge was based on information that Prosecutor Greer knew or should have known was false.

253.    Captain Stimpson's and Prosecutor Greer's separate failures to take any procedural steps whatsoever to cause the felony DUI charge against Cosby to be withdrawn caused Cosby to be tried and incarcerated for a non-existent crime, thereby denying Cosby liberty without procedural due process of law, in violation of the Fourteenth Amendment of the United States Constitution and the Constitution of Virginia, Article I, ' 11.

254.    Captain Stimpson and/or Prosecutor Greer are each, therefore, personally liable to Cosby for his resulting injuries and damages.

## ELEVENTH CAUSE OF ACTION
### Denial of Liberty Without Substantive Due Process
### (Against Captain Stimpson and Prosecutor Greer Individually)

255.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

256.     Captain Stimpson was under an affirmative obligation, as a matter of due process, to fully investigate the merits of Cosby's complaint alleging that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after Defendant Officers' traffic stop on October 24, 2012, and to secure the withdrawal of the felony DUI charge against Cosby, as the charge was based on information that Captain Stimpson knew or should have known was false.

257.     Prosecutor Greer knew that Cosby issued a complaint to Captain Stimpson and the Police Department alleging that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after Defendant Officers' traffic stop on October 24, 2012.

258.     Prosecutor Greer was under an affirmative obligation, as a matter of due process, to fully investigate the merits of Cosby's complaint and to secure the withdrawal of the felony DUI charge against Cosby, as the charge was based on information that Prosecutor Greer knew or should have known was false.

259.     Captain Stimpson's and Prosecutor Greer's separate failures to cause the felony DUI charge against Cosby to be withdrawn caused Cosby to be tried and incarcerated for a non-existent crime, thereby denying Cosby liberty without substantive due process of law, in violation of the Fourteenth Amendment of the United States Constitution and the Constitution of Virginia, Article I, ' 11.

260.     Captain Stimpson and Prosecutor Greer are each, therefore, personally liable to Cosby for his resulting injuries and damages.

**TWELFTH CAUSE OF ACTION**
**Gross Negligence**
**(Against All Defendant Officers, Unknown Officers, and Captain Stimpson)**

43

261.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

262.    Defendant Officers, Unknown Officers, and Captain Stimpson each had a duty to conduct a competent investigation and protect Cosby's constitutional rights by, inter alia: refraining from fabricating evidence; ensuring the preservation of all evidence, including videos taken from a patrol car dash cam, in compliance with regular police procedures; and informing the appropriate Commonwealth's Attorney's Office, the court, and Cosby and his counsel of the existence of exculpatory and impeachment evidence, as well as turning over the same to the proper parties as required and/or when requested.

263.    Defendant Officers, Unknown Officers, and/or Captain Stimpson each failed to conduct a competent investigation and protect Cosby's constitutional rights in each of these instances.

264.    Defendant Officers, Unknown Officers, and/or Captain Stimpson breached their duty and violated applicable standards of care by failing to exercise due diligence in numerous aspects of their investigation, as well as in their response to Cosby's post-conviction document requests.  These failures individually and cumulatively had the effect of showing a reckless or total disregard for Cosby's constitutional rights.

265.    The conduct by Defendant Officers, Unknown Officers, and/or Captain Stimpson demonstrates a level of indifference to Cosby so as to constitute an utter disregard of prudence amounting to a complete neglect for Cosby's constitutional rights, liberty, and safety.

266.    As a direct and proximate result of said breach by Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby served five years in prison for a crime he did not commit.

## THIRTEENTH CAUSE OF ACTION
### Gross Negligence
### (Against Police Department and Town)

267.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

268.    Upon receiving Cosby's complaint that Officer Godsey lied to the court at the suppression hearing about the events that occurred during and after the traffic stop on October 24, 2012, the Police Department and/or Town had a duty to conduct a competent investigation of Cosby's complaint and protect Cosby's constitutional rights by, inter alia; discovering the true nature of the encounter between Cosby and Defendant Officers on the evening of October 24, 2012, including the discovery that a video of the encounter had been taken by the dash cam on Officer Hoyle's patrol car; ensuring the preservation of all evidence, including videos taken from a patrol car dash cam, in compliance with regular police procedures; and informing the appropriate Commonwealth's Attorney's Office, the court, and Cosby and his counsel of the existence of exculpatory and impeachment evidence, as well as turning over the same to the proper parties as required and/or when requested.

269.    The Police Department and/or the Town failed to conduct a competent investigation of Cosby's complaint and protect Cosby's constitutional rights in each of these instances.

270.    The Police Department and/or the Town breached their duty and violated applicable standards of care by failing to exercise due diligence in numerous aspects of their investigation, as well as in their response to Cosby's post-conviction document requests.  These failures individually and cumulatively had the effect of showing a reckless or total disregard for Cosby's constitutional rights.

45

271.    The conduct by the Police Department and/or the Town demonstrates a level of indifference to Cosby so as to constitute an utter disregard of prudence amounting to a complete neglect for Cosby's constitutional rights, liberty, and safety.

272.    As a direct and proximate result of the breach by the Police Department and/or the Town, Cosby served five years in prison for a crime he did not commit.

**FOURTEENTH CAUSE OF ACTION**
**Gross Negligence**
**(Against Prince Edward County, the CAO, and Prosecutor Greer)**

273.     Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

274.    Prince Edward County, the CAO, and/or Prosecutor Greer had a duty to prosecute only those criminal matters that occurred within the boundaries of their prosecutorial jurisdiction, that is, within the bounds of Prince Edward County.

275.    Prince Edward County, the CAO and/or Prosecutor Greer breached this duty and violated applicable standards of care when they undertook to prosecute a felony DUI against Cosby based on the October 24, 2012 encounter between Defendant Officers and Cosby.

276.    The encounter and the underlying alleged criminal acts occurred wholly in Cumberland County.

277.    The Prince Edward County Circuit Court did not ever enter an order to appoint the CAO as special prosecutor for the instant case in accord with Virginia Code §§ 19.2-155 and 19.2-156.

278.    Absent a special prosecution appointment order, the CAO is limited to prosecuting only cases within the bounds of the County of Prince Edward in accord with Virginia Code § 16.2-1627.

279.    Upon undertaking the prosecution of the felony DUI case against Cosby, Prince Edward County, the CAO and/or Prosecutor Greer had actual knowledge that the criminal acts that Cosby allegedly committed occurred wholly within the bounds of Cumberland County.

280.    Their prosecution against Cosby was ultra vires and had the effect of showing a reckless or total disregard for Cosby's constitutional rights.

281.    The conduct of Prince Edward County, the CAO, and/or Prosecutor Greer demonstrates a level of indifference to Cosby so as to constitute an utter disregard of prudence amounting to a complete neglect for Cosby's constitutional rights, liberty, and safety.

282.    As a direct and proximate result of the breach by Prince Edward County, the CAO, and/or Prosecutor Greer, Cosby served five years in prison for a crime he did not commit.

### FIFTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against All Defendant Officers, Unknown Officers, Captain Stimpson, and Juror Emert)

283.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

284.    The intentional, bad faith, and/or reckless acts by Defendant Officers, Unknown Officers, Captain Stimpson, and/or Juror Emert described above were outrageous and intolerable, and offend the generally accepted standards of decency and morality.

285.    The acts by Defendant Officers, Unknown Officers, and/or Captain Simpson included, inter alia, fabricating evidence, withholding exculpatory and impeachment evidence from the CAO, Prosecutor Greer, and the court, and thus from Cosby and his counsel, testifying falsely against Cosby in the hearing on his motion to suppress and at trial, failing to bring to light the video of the October 24, 2012 encounter between Cosby and the Defendant Officers taken by the dash cam

47

on Officer Hoyle's patrol car, and suppressing the results of the investigation of Cosby's complaint that Officer Godsey provided false testimony at the suppression hearing.

286.   The acts by Juror Emert include, inter alia, failing to inform the CAO, Prosecutor Greer, and the court of the extent of his prior criminal prosecutions of, and bias and animosity toward, Cosby, and taking action to persuade other jurors to find Cosby guilty of the crime alleged against him.

287.   Defendant Officers, Unknown Officers, Captain Stimpson, and/or Juror Emert intended to cause Cosby severe emotional distress, or they knew or should have known that Cosby would suffer severe emotional distress.

288.   Because of the actions of Defendant Officers, Unknown Officers, and/or Captain Stimpson, Cosby was arrested, put on trial for felony DUI, a crime he did not commit, and found guilty of that crme.

289.   Because of the actions of Juror Emert, Cosby was found guilty of a crime he did not commit and sentenced to a five-year period of imprisonment.

290.   As a direct and proximate result of the misconduct and abuse by Defendant Officers, Unknown Officers, Captain Stimpson, and/or Juror Emert, Cosby served five years in prison for a crime he did not commit.

291.   During this period, as a result of the wrongful conduct by Defendant Officers, Unknown Officers, Captain Stimpson, and/or Juror Emert, Cosby suffered severe emotional distress in the form of public humiliation, constant fear for his safety, liberty, and life; severe depression and anxiety; loss of sleep; and severe anguish such that a no reasonable person could be expected to endure it.

## SIXTEENTH CAUSE OF ACTION
### Respondeat Superior
### (Against Town and Police Department)

292.    Cosby repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

293.    In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers, Unknown Officers, and Captain Stimpson were members of, and employees and/or agents of, the Town and/or the Police Department acting at all relevant times within the scope of their employment and under color of law.

294.    The Town and/or Police Department are liable as principal for all torts committed by their agents and/or employees.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays the Court for the following relief:

A.    A trial by jury on all contested issues of fact;

B.    An order vacating and setting aside Plaintiff's judgment of conviction for felony DUI;

C.    Compensatory damages from Defendants in an amount to be determined at trial;

D.    Punitive damages against Defendant Officers, Unknown Officers, Captain Stimpson, and/or Juror Emert in an amount to be determined at trial;

E,    Pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees and costs pursuant to 42 U.S.C. ' 1988; and

F.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

THADDEUS COSBY

By counsel

Dated:  June 29, 2020

Counsel for Plaintiff Thaddeus Cosby:


_____/S/_____
John M. Janson
Attorney at Law
VSB # 91236
830 West High Street
South Hill, VA 23970
434-953-8794
johnmjanson@gmail.com