```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                        Richmond Division
```

THADDEUS COSBY,

    Plaintiff,

v.                                      Civil Action No. 3:20cv494

TOWN OF FARMVILLE,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO DISMISS (ECF No. 9) filed by the defendants, Town of Farmville, the Farmville Police Department, H.A. Hoyle, Jr., and Stewart Godsey. Officers Hoyle and Godsey are employed by the Farmville Police Department.[1] In his blunderbuss Complaint (ECF No. 1), Thaddeus Cosby identified ten defendants and eleven unknown officers in sixteen counts.[2] By ORDER entered on March 9, 2021 (ECF No. 25), and for reasons set

---

[1] By ORDER entered on March 9, 2021 (ECF No. 25), the Court denied PLAINTIFF'S MOTION TO EXTEND TIME FOR SERVICE OF COMPLAINT (ECF No. 15) and PLAINTIFF'S MOTION TO EXTEND TIME TO FILE HIS RESPONSE TO MOTION TO DISMISS FILED BY DEFENDANTS TOWN OF FARMVILLE, FARMVILLE POLICE DEPARTMENT, H.A. HOYLE, JR., AND STEWART GODSEY (ECF No. 17). Cosby, acting pro se, appealed that ORDER. The appeal does not affect the Court's jurisdiction to entertain this motion (ECF No. 9).

[2] The Complaint reflects a rather startling lack of appreciation for the legal concepts which it purports to invoke.

forth in an accompanying MEMORANDUM OPINION (ECF No. 24), this action was dismissed without prejudice as to the Estate of Timothy M. Bourne; Wade Stimson, Individually and in his Official Capacity as Captain of the Farmville Police Department; Office of the Commonwealth's Attorney for Prince Edward County, Virginia; Morgan Greer, Individually and in his Official Capacity as Assistant Commonwealth's Attorney for Prince Edward County, Virginia; J. David Emert; and Unknown Officers 1-11. By ORDER entered October 22, 2020 (ECF No. 11), the defendant, Prince Edward County, Virginia, was dismissed with prejudice as a defendant in this action.

Consequently, the only defendants remaining in the case are the Town of Farmville, Virginia, the Farmville Police Department, Officer Hoyle, and Officer Godsey. Both officers are sued in their capacities as individuals and their official capacities as officers in the Farmville Police Department. It is these remaining defendants who now seek dismissal of claims against them pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the MOTION TO DISMISS (ECF No. 9) will be granted.

## BACKGROUND[3]

On October 24, 2012, Cosby was arrested for a third driving-under-the-influence offense and for driving on a revoked license. (ECF No. 1, Exs. A and B). This action was filed because allegedly "Cosby was wrongfully convicted of a felony DUI in October 2013 and he served five years in prison." (ECF No. 1, ¶ 1). According to the Complaint, the wrongful conviction was a result of the conduct, inter alia, of Hoyle and Godsey and the policies and practices of the Town of Farmville and the Farmville Police Department. (ECF No. 1, ¶¶ 3, 4). Following his conviction, Cosby was imprisoned in Virginia's jails and prisons from October 4, 2013 until his release on May 21, 2018. (ECF No. 1, ¶ 8).

The unusual circumstances giving rise to Cosby's claims are alleged to have begun in early October 2012 when Cosby was involved in a romantic relationship with Janette Fisher who, at the time also was allegedly involved in a romantic relationship with an unidentified law enforcement officer employed by the Farmville Police Department. (ECF No. 1, ¶¶ 36-39). On October 10, 2012, Godsey and Hoyle, along with two other unidentified officers, are

---

[3] As appropriate under the applicable standard for assessing motions brought under Rule 12(b)(6), the facts are stated as alleged in the Complaint and in the documents that are attached thereto.

3

said to have approached Cosby; and Fisher and Godsey is said to have "orally instructed Cosby to leave Ms. Fisher alone." (ECF No. 1, ¶ 40).

The Complaint alleges that this warning was issued pursuant to a "custom or policy" of the Farmville Police Department "to harass, threaten, and punish individuals who engage in a romantic or sexual relationship with a third party" who is also "engaged in" such a relationship "with a fellow [Farmville] Police Department officer." (ECF No. 1, ¶ 42). It is also asserted that the purpose of the alleged acts was "to retaliate against such conduct by third parties and to deter them." (ECF No. 1, ¶ 43).[4]

The rather strange saga resumes on the evening of October 24, 2012 when Cosby and Fisher attended a party together in Cumberland County, Virginia. (ECF No. 1, ¶¶ 36, 45). It is alleged that, while attending the party, Fisher saw a text from another woman on Cosby's telephone and became upset. Around 10:00 p.m., Fisher and Cosby left the party, got into a Nissan Armanda (owned by Cosby's brother), and started to drive toward Fisher's residence. It is asserted that Cosby was, at the time, in the passenger seat and that Fisher was driving.

---

[4] The Complaint is devoid of any facts about the alleged "custom or policy" or any other application of it.

4

As the car neared the intersection of River Road and North Main Street, Fisher slowed the car, abruptly exited from it, ran toward the Appomattox River bridge, and appeared to jump over the railing of the bridge. (ECF No. 1, ¶¶ 36-53). According to the Complaint, Cosby then got into the driver's seat of the vehicle, moved it from the middle of the road, and parked it in a gravel area near the bridge. (ECF No. 1, ¶ 55). And it is this conduct, the moving of the Nissan Armada, that is the source of driving offenses (DUI and driving on a suspended license) on which he was arrested and which led to his conviction. According to Cosby, he had nothing to drink before he engaged in this conduct.

It is alleged that, at approximately 10:13 p.m. (13 minutes after Cosby and Fisher left the party), the dispatcher for Farmville Police Department directed officers to respond to the Appomattox River Bridge area because a domestic incident was afoot. Godsey was the first officer on the scene. (ECF No. 1, Ex. A). He was joined by Hoyle very shortly thereafter. (ECF No. 1, Ex. E, p. 4).

It appears from the Complaint that some credence was given to Cosby's statement that Fisher may have jumped from the Appomattox River bridge because not long after arriving at the scene, Godsey departed in his patrol car to determine whether Fisher was with a friend who lived nearby, while Hoyle, Cosby and others searched

5

for Fisher. Very shortly thereafter, however, Fisher was located nearby. By then, Cosby had returned to the Nissan Armada that previously he had driven and parked. Godsey says that he then took a drink of whiskey from a bottle in the Nissan Armada.

When Cosby saw that Fisher seemed to be uninjured, it is alleged that he attempted to leave the scene but was stopped by Godsey because Cosby smelled of alcohol. (ECF No. 1, Ex. A). Godsey thereafter administered field sobriety tests to Cosby. After Cosby had failed those tests, he was arrested and transported to the Farmville Police Department where he was given a breathalyzer test which revealed that his blood alcohol content was 0.137. (ECF No. 1, Exs. A and B). Cosby was arrested on a Class VI felony because this was his third DUI offense within five years.

In September 2013, the state court held a suppression hearing in which it is alleged that Godsey and Hoyle lied about whether Cosby was under the influence of alcohol and whether there existed video recordings (made by dashboard cameras ["dash cams"]) of the events surrounding Cosby's arrest. (ECF No. 1, ¶¶ 106, 107). The motion to suppress was denied and, on October 4, 2013, Cosby was tried by a jury and convicted of the felony DUI charge. It is alleged that the lies by Godsey and Hoyle produced Cosby's conviction. It appears from the Complaint that the alleged

untruths were challenged at trial by Cosby's counsel but, nevertheless, the jury convicted Cosby and sentenced him to five years of imprisonment.

While serving his sentence, Cosby filed a petition for a writ of habeas corpus in the state court which, after a hearing, was denied. It thus appears from the Complaint that Cosby's conviction and sentence have been validated by the appellate process and have not been set aside.

At the core of the Complaint, and of each of its individual counts, are Cosby's contentions that: (1) Hoyle had a dash cam that recorded Cosby's arrest by Godsey on the evening of October 24, 2012; and (2) in the suppression hearing and at trial, Hoyle and the others lied about the availability of that video recording, which would have proved his innocence.

According to the Complaint, the next event in this story took place on May 20, 2019, after Cosby had been released from prison. On that day, Cosby taped an oral conversation between him and Hoyle in which there was discussion of Cosby's arrest by Godsey on October 24, 2012. (ECF No. 1, Ex. E). It is alleged that, during that conversation, Hoyle admitted that a dash cam video had, in fact, been made of the October 24, 2012 arrest of Cosby by Godsey; and that Hoyle and Godsey (and the unknown officers) knew that the video recording existed. The Complaint alleges that the video

7

tended to substantiate Cosby's account of the facts and tended to show that the statement made by Godsey in the incident report was false, but the Complaint does not explain how that was so. (ECF No. 1, ¶¶ 94, 95). The transcribed record of the conversation between Cosby and Hoyle on May 20, 2019 is Exhibit E to the Complaint.

Notwithstanding the contrary allegations in the text of the Complaint, the text of Exhibit E does not support the allegation that, on May 20, 2019, Hoyle "admitted that a dash cam video had, in fact, been made of the October 24, 2012 encounter between the Defendant Officers and Cosby." To the contrary, as to the subject of video recordings from dash cams in the police cars, the transcript shows that Hoyle actually explained that Godsey did not have video capacity (dash cam) in his patrol car on the evening in question, and that, as to the car that Hoyle was driving on that evening, Hoyle actually says that "I did not activate my emergency lights on your DUI stop and I should have clarified that more in writing. I didn't. So I wasn't there, okay?" (ECF No. 1, Ex. E, p. 7).

Hoyle also makes clear that, when he first arrived at the bridge to help look for Fisher (which was well before Godsey arrested Cosby), he had turned on the lights in his car for "a split second." (Id.) He repeated that statement again on page

8

10. Further, Hoyle states that he did not know if briefly activating his lights had activated the dash cam or not. (ECF No. 1, Ex. E, p. 12). More importantly, Hoyle makes clear that, even if the dash cam had been activated when he turned his lights on for that brief instant following his arrival at the bridge, and, if it had been on at the scene of the DUI arrest, there would be no video recording of the arrest. That, Hoyle explains, is because "where I was parked, the way I'm parked, all it would have given you was the side panel of what's the name of that place, the kayak place." (ECF No. 1, Ex. E pp. 13-14). Holye amplifies that by saying "none of that, if it recorded, it just recorded the side of that building." (ECF No. 1, Ex. E, p. 14). Further, Holye underscores that, while he did activate his lights briefly when he first arrived at the bridge to look for Fisher, he did not activate them at the scene of the DUI arrest "because I wasn't there [at the scene of the DUI arrest]." (ECF No. 1, Ex. E, p. 16). All of this information is part of Cosby's Complaint because it is in Exhibit E which is referred to and attached to the Complaint.

This, then, is the background against which the motion to dismiss must be considered.

## DISCUSSION

A. **The Standard Governing Fed. R. Civ. P. 12(b)(6): Failure to State a Claim**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "tests the sufficiency of a complaint." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss, the factual allegations set forth in the complaint must be sufficient to "'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Nevertheless, "[a] complaint should not be dismissed pursuant to Rule 12(b)(6) . . . unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief." Chapman v. Clarendon Nat'l Ins., 299 F. Supp.2d 559, 562 (E.D. Va. 2004).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, 891 F.3d at 145. However,

10

courts need not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014)). And, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Although a court's review is generally limited to the allegations in the complaint, where a copy of a written instrument is attached as an exhibit to the complaint or incorporated therein by reference, the instrument is part of the complaint and a court may consider it. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); see also Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

These legal precepts inform the analysis of the pending motion.

B. **The Claims Under 42 U.S.C. § 1983: Statute of Limitation**

Cosby's FIRST through NINTH CAUSES OF ACTION (which, for the sake of simplicity, will be referred to hereafter by using Arabic numbers and the appellation "Count" (e.g. Count 1)) purport to

11

assert claims said to arise under the United States Constitution and brought in federal court under 42 U.S.C. § 1983.[5] Hoyle and Godsey moved to dismiss each of those counts because, as alleged in the Complaint and the exhibits, those Section 1983 claims all are barred by the statute of limitations.

It is now settled that claims brought by virtue of § 1983 are governed by state statute of limitations applicable for general personal injury cases. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for such claims. Va. Code Ann. § 8.01-243(A). Therefore, the applicable limitations period for § 1983 violations occurring in Virginia is two years. Houghton v. Com. of Va., 947 F.2d 941 (4th Cir. 1991); Richards v. Muse, No. 1:13cv1472, 2015 WL 853886, *3 (E.D. Va. 2015).

Also, it is settled that, while state law supplies the limitation period for Section 1983 claims, federal law supplies the rule of decision for when a particular claim accrues. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). And, under federal law it is settled that "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that

---

[5] Section 1983, of course, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 114 S. Ct. 807, 811 (1994) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

reasonable inquiry will reveal his cause of action." Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (citing United States v. Kubrick, 444 U.S. 111, 122-24 (1979)). In other words, when a plaintiff has information regarding the fact of injury and who effected it, the principle of inquiry notice requires the plaintiff to undertake an investigation as to the details of his claims. The failure to satisfy that obligation dooms his claim. Indeed, as the Fourth Circuit put the matter in Nasim, "postponing the accrual of [plaintiff's claim after being on notice] would undermine the purpose of limitations statute." Id. (citing and quoting Kubrick at 122-24).

An examination of the Complaint and the exhibits attached thereto, demonstrate that, at least by the time Cosby's trial was over in October 2013, Cosby was aware of virtually all the facts on which he bases the 1983 claims in Counts 1 through 9. In particular, by then, Cosby knew that, at the suppression hearing and the trial, the officers had testified about the absence of, dash cam evidence. And, Cosby knew that a subpoena *duces tecum* had been issued for dash cam evidence before his trial, and that he had received a response that there was no such video recording and that response was confirmed by Hoyle. (ECF No. 1, Exs. C and D). However, the Complaint also states that, on the evening in

13

question, October 24, 2012, Cosby had seen the lights in Hoyle's car activate and that blinking lights signaled that the dash cam was on and that a video of the encounter was being taken. (ECF No. 1, ¶¶ 68-70). It also is obvious that, before his trial, Cosby had access to the Incident Report (that he claims was false respecting whether he was driving the Nissan Armada) as well as the allegedly false Criminal Complaint made on October 24. (ECF No. 1, ¶¶ 85-86). Taken as a whole, the Complaint shows that, at least, by the end of his trial in October 2013, Cosby was on inquiry notice of the facts on which he bases Counts 1 through 9.

Cosby seeks to avoid the bar of the statute of limitations by asserting that, on May 20, 2019 when he taped his conversation with Hoyle, he secured evidence that a video dash cam recording did exist. That theory fails for the simple reason that the transcript proves that Hoyle activated the lights briefly on his car only at the commencement of the effort to locate Fisher earlier in the evening when he arrived at the bridge, not at the later time when Godsey arrested Cosby. Moreover, the transcript shows that Hoyle said that he was not even present at the time Godsey arrested Cosby. Nothing in the pleadings or the exhibit refutes that. And, even if Hoyle had activated the dash cam, the record establishes that it would have recorded the side of a building, not Cosby's arrest.

14

In sum, Exhibit E, which Cosby chose to make part of his Complaint, eliminates the notion that Cosby was not first on notice of his claims until May 20, 2019 (a date that is within the statutory two-year period). Indeed, Exhibit E renders it implausible that Cosby discovered anything on May 20, 2019 that would save Counts 1 through 9 from the bar of the statute of limitations.

At the very least, the transcript shows that Cosby received the papers supporting his theories "a year before I was getting ready to come home." (ECF No. 1, Ex. E, p. 9, lines 1-2). Cosby was released from prison on May 21, 2018 (ECF No. 1, ¶ 8) which means that, as early as May 2017 (a year before he came home), Cosby had the papers that he says support the claims that he asserts in Counts 1 through 9.

Cosby is bound by what is in his Complaint, including exhibits he attached to it and on which he relied in it. True, Cosby is entitled to all reasonable inferences at this stage of the proceedings. Here, however, the Complaint, the exhibit, and the reasonable inferences necessitate the conclusion that the § 1983 claims are barred by the applicable statute of limitations and thus Counts 1 through 9 will be dismissed with prejudice.

15

## C. The Defendants' Heck v. Humphrey Arguments

Hoyle and Godsey also contend that this suit is collateral attack on Cosby's conviction and hence barred under the rule of Heck v. Humphrey, 512 U.S. 477 (1994). It is unnecessary to reach that question given the ruling on the statute of limitations and the Court does not address it.

## D. Official Capacity Claims Against Hoyle and Godsey

Hoyle and Godsey also say that the official capacity claims against them must be dismissed as redundant of the claims brought against the Town of Farmville and the Farmville Police Department. And, indeed, it is settled that a claim brought against a public official in his official capacity is treated as an action against the public employer. Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 165 (1985). Accordingly, under circuit precedent, it is appropriate to dismiss the official capacity claims against Hoyle and Godsey as redundant of the claims against the Town of Farmville and the Farmville Police Department. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); Mainstream Loudon v. Board of Trustees of Loudoun County Library, 2 F. Supp.2d 783, 790 (E.D. Va. 1988).

16

### E. The Conspiracy Claim/the Intracorporate Conspiracy Doctrine

In Count 4, Cosby purports to advance a claim for conspiracy to violate his constitutional rights. According to Hoyle and Godsey, that claim fails as a matter of law under the so-called Intracorporate Conspiracy Doctrine. Again, the officers are correct. The United States Court of Appeals for the Fourth Circuit has applied that doctrine to claims of conspiracy brought pursuant to 42 U.S.C. §§ 1983 and 1985. See Buschi v. Kirven, 775 F.2d 1240, 1252-53 (4th Cir. 1985). All of the alleged conspirators are said to be members of the Farmville Police Department. Accordingly, the Intracorporate Conspiracy Doctrine applies and operates as a complete bar to Count 4.

### F. The Asserted Monell Claims

Cosby presents two claims under the doctrine of Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1973). In Count 6, Cosby asserts that the Town of Farmville and the Farmville Police Department had a policy of encouraging "unconstitutional behavior and procedures toward Farmville-area residents who have a prior criminal record, and/or individuals who engage in a romantic or sexual relationship with a third party in situations wherein the third party is or was also engaged in a romantic or sexual relationship with a Police Department officer, and/or Farmville-area residents and students who were susceptible

17

to false charges of DUI or public drunkenness which represented the custom, policy, and/or practice of the Town and/or Police Department, such that Cosby's constitutional deprivations alleged herein were in furtherance of the custom, policy, and/or practice of the Town and/or Police Department. (ECF No. 1, ¶ 212). In Count 7, Cosby alleges a claim for unconstitutional and inadequate training and supervision. In essence, the charge is that the Town and/or Police Department failed to properly teach the storing of evidence, the retention of evidence, and the turning over of exculpatory evidence. (ECF No. 1, ¶ 221).

To begin, the <u>Monell</u> claims are alleged in a conclusory fashion that simply do not pass the rules of pleading established in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007). Rather they are generally stated, broad and conclusory statements unsupported by any factual presentation whatsoever. Counts 6 and 7 fail for that reason alone.

Moreover, in neither Count 6 nor Count 7 does the Complaint provide any facts permitting an inference that these allegedly pervasive customs, policies, and practices were implemented other than on one occasion. And, it is clear beyond question that, as a matter of law, the isolated incident cited by Cosby cannot serve as the basis for a pattern and policy practice claim under <u>Monell</u>.

Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003); Kopf v. Wing, 942 F.2d 265, 69 (4th Cir. 1991). Accordingly, Counts 6 and 7 fail for that additional reason.

**G.     The State Law Claims**

In Counts 10 through 16, Cosby asserts alleged violations of state law. The Court declines to exercise jurisdiction over those state law claims under 28 U.S.C. § 1367 because it has dismissed all claims over which it might have had jurisdiction.

It is true that, in Counts 10 and 11, Cosby talismanically asserts that he has been denied rights guaranteed by both the Fourteenth Amendment of the federal Constitution and the Constitution of Virginia. However, both counts are stated, insofar as the Fourteenth Amendment is concerned, in conclusory terms and in ways that refer to, and rely on, state law duties, and the talismanic mention of the Fourteenth Amendment in Counts 10 and 11 does not pass pleading muster under Twombly and Iqbal.

**CONCLUSION**

For the foregoing reasons, Counts 1 through 9 (the FIRST through NINTH CAUSES OF ACTION) against the Town of Farmville, the Farmville Police Department, Officer Hoyle and Officer Godsey will be dismissed with prejudice. Because the Court has declined to exercise jurisdiction over Counts 10 through 16 (the TENTH through

19

SIXTEENTH CAUSES OF ACTION) under 28 U.S.C. § 1367, those counts will be dismissed without prejudice. The MOTION TO DISMISS (ECF No. 9) will be granted.

It is so ORDERED.

/s/ RSP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 12, 2021

20